**Opinion issued October 15, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01146-CV

———————————

**THANG BUI AND MONIQUE NGUYEN, Appellants**

**V.**

**MAYA DANGELAS, Appellee**

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2018-55787

## MEMORANDUM OPINION

Maya Dangelas is a businesswoman living in Houston. She is originally from Vietnam but moved to Houston as an adult.

Thang Bui and Monique Nguyen are members of the Vietnamese-American community in Houston. Bui and Nguyen authored posts on Facebook about

Dangelas. They alleged she was a member of the Viet Cong and a part of a secret Viet Cong plot to bribe locals. They also posted pictures of Dangelas and her immediate family and disclosed her home address. Even after the posts elicited calls to harm Dangelas and her family, Bui and Nguyen added more accusatory posts. Dangelas asked that the posts be removed and, when they were not, Dangelas sued Bui and Nguyen for defamation.

Bui and Nguyen moved for dismissal of Dangelas's suit under the Texas Citizens Participation Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The trial court denied their motions, and they have appealed.

In three issues, Bui and Nguyen contend the trial court erred in denying their motions. We affirm.

## Background

Thang Bui and Monique Nguyen live in the Houston area. Neither has met Maya Dangelas, but both have read about her on the internet, including about parties she has hosted, donations she has made to various charities, and business ventures she has managed. Bui and Nguyen came to the conclusion that Dangelas is a communist with loyalties to the communist Vietnamese government. They announced their conclusions to the Vietnamese community through posts added to their own Facebook pages and to a community Facebook page called "Dan Saigon

2

Zui" with over 90,000 members who are in Houston, other American cities, and Vietnam. Their posts were in Vietnamese and occasionally in English.

In their Facebook posts, Bui and Nguyen declared that Dangelas is "one of the main heads" of a Viet Cong group that acts "to purposely bribe the anti-communists" in the Houston area for the benefit of the Viet Cong, thus making her "the Viet Cong bitch in Houston."[1] Bui made a specific factual allegation in one of his posts that "since 2012," Dangelas has lived in Houston and "received assistance from the Viet Cong Embassy to gradually transfer 1 billion US Dollars to the United States to carry out" a conspiracy to benefit the Viet Cong and communism.

Nguyen wrote that Dangelas is "a local Communist" who uses Vietnamese money to "perform her duties as a member of the communist party." In an exchange on Facebook, a person who is not a party to this litigation urged Nguyen to "catch" Dangelas and "slaughter her." Nguyen responded, "I give you the opportunity to slaughter her," to which the person lamented that it could not be done from their location in Vietnam. Then, the person offered that Nguyen should "bully" Dangelas so she will leave the United States. Nguyen replied, "Doing it right now, dear."

Other posters also responded, calling Dangelas a money launderer and accusing her of coming to the United States "to break up and divide the

---

[1] The Facebook posts were translated to English for court filings.

3

community" and calling on the Vietnamese-American community to act: "Destroy her."

Even after engaging in these online conversations and seeing the anger and threats they evoked, Bui falsely wrote on Facebook that Dangelas's young daughter is the biological child of the communist former leader of Vietnam who local Vietnamese-Americans associate with their painful past in Vietnam and the struggles that led so many to become refugees.[2] After the accusation, Nguyen posted the young child's name, and Bui published the Dangelas home address.

Bui's and Nguyen's posts received alarmed responses. There was a call for the Vietnamese community to "stand shoulder to shoulder" with Bui (whom the poster called "the first instigator" against Dangelas), "to kill her without leaving a trace," to "boycott her, lock her up" and to "hang her in the Vietnamese area(s) to set an example for other Viet Cong bitches," and to kill Dangelas's daughter, "a Communist offspring" who "must be disposed of."

Dangelas was alarmed by the posts and feared for her own safety and that of her children. When Bui and Nguyen would not relent, she sued them for defamation because their posts were false, harmful to her reputation, and dangerous.

---

[2] The accusation was proven false through the child's actual biological father's testimony about previously conducted DNA testing.

4

**Texas Citizens Participation Act**

Both Bui and Nguyen filed motions to dismiss Dangelas's defamation suit under the Texas Citizens Participation Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The TCPA is found in Chapter 27 of the Civil Practice and Remedies Code, which is titled, "Actions Involving the Exercise of Certain Constitutional Rights." The TCPA's purpose is to protect "citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). It does so by creating a "set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting." *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring); *see* TEX. CIV. PRAC. & REM. CODE §§ 27.003–.005, .009.

## A.    TCPA's dismissal provision and relevant statutory definitions

Section 27.003 of the TCPA provides that a party may file a motion to dismiss a legal action that "is based on, relates to, or is in response to [that] party's exercise of" one of three rights: free speech, petition, or association. TEX. CIV. PRAC. & REM. CODE § 27.003(a). The Legislature defined "[l]egal action" as "a

5

lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). The Legislature also statutorily defined the three sets of rights protected by TCPA summary-dismissal procedures. *Id.* § 27.001(2) (defining "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests"); § 27.001(3) (defining "exercise of the right of free speech" as "a communication made in connection with a matter of public concern"); § 27.001(4) (defining "exercise of the right to petition").

**B.     TCPA's shifting burdens**

When a movant seeks dismissal under the TCPA, the movant has the initial burden to show by a preponderance of the evidence that the nonmovant has asserted a "legal action" that is based on, relates to, or is in response to the movant's exercise of one of the three rights delineated in the statute. *Id.* § 27.005(b). If the movant meets that burden, the burden shifts to the nonmovant.

The nonmovant has the burden to establish by clear and specific evidence a "prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).[3] This generally "requires only the minimum quantum of evidence

---

[3]     Dismissal may be required, notwithstanding the nonmovant's evidence proffered to meet its burden, if the movant establishes "by a preponderance of the evidence

6

necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted); *see, e.g.*, *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (explaining that Legislature's use of "prima facie case" in Chapter 27 implies minimal factual burden). "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citation omitted) (disapproved of on other grounds, *In re Lipsky*, 460 S.W.3d at 587–88); *cf. Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) (explaining that summary-judgment movant's presentation of prima facie evidence of deed's validity established right to summary judgment unless nonmovants presented evidence raising fact issue related to deed's validity).

A nonmovant should be able to meet the clear and specific standard in a defamation case if her "pleadings and evidence" establish "the facts of when,

---

each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff." *In re Lipsky*, 460 S.W.3d at 591. It generally suffices if a plaintiff provides "enough detail to show the factual basis for its claim." *Id.* This standard is higher than the notice-pleading standard, *see* Tex. R. Civ. P. 45, 47, but it does not require direct evidence; circumstantial evidence can suffice. *In re Lipsky*, 460 S.W.3d at 591. At the same time, though, "[c]onclusory statements are not probative and . . . will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see In re Lipsky*, 460 S.W.3d at 592 (explaining that "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under TCPA).

The trial court considers the pleadings and any supporting and opposing affidavits to evaluate whether each party has met its burden. Tex. Civ. Prac. & Rem. Code § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587. The trial court also "may allow specified and limited discovery relevant to the motion" to dismiss. Tex. Civ. Prac. & Rem. Code § 27.006(b); *see In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 472–73 (Tex. App.—Fort Worth 2019, no pet.) (acknowledging that "some merits-based discovery" may be necessary for nonmovant to respond to TCPA dismissal motion). Thus, in addition to the pleadings and affidavits, "a trial court may, but is

8

not required to, hear live testimony and receive the submission of documentary evidence" in determining whether to grant or deny a motion to dismiss. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied). A trial court considers the pleadings and evidence in the light most favorable to the nonmovant. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

## Standard of Review

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Better Bus. Bureau*, 441 S.W.3d at 353. To the extent resolution of this appeal turns on construction of the TCPA, we review that de novo as well. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id.* If that language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* Additionally, we construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

## Step One: Bui and Nguyen's Initial Burden

Bui and Nguyen identify two rights they contend Dangelas's defamation suit is based on, related to, or is in response to: the right of association and the right of

9

free speech. They request dismissal of Dangelas's suit, in full, and the dissolution of injunctive relief already granted.

Dangelas's brief argues that Bui and Nguyen cannot meet their burden with respect to the right of free speech, but she offers no argument that Bui and Nguyen failed to meet their initial with respect to their right to association. We conclude that Dangelas's defamation claim is in response to Bui and Nguyen's exercise of the right of association.

The TCPA defines the "[e]xercise of the right of association" as a "communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE § 27.001(2). Some of Bui's and Nguyen's Facebook posts were made on a Facebook group site called "Dan Saigon Xui," which addresses issues relevant to the Vietnamese-American community and has more than 90,000 members. Dangelas sued Bui and Nguyen for defamation based on the content of these Facebook posts.

All parties agree that Vietnamese-Americans have strong feelings about the Communist Party in Vietnam and that any allegation that a person is a member of the Viet Cong would, as Dangelas stated in her affidavit, be "considered a terrible thing" because the "Vietnamese community in America view the Viet Cong with hatred and contempt," in part because the "Viet Cong killed, imprisoned, and

10

tortured many people, including members of the Vietnamese refugee community in America."

Bui and Nguyen's posts catered to the fear and anger in the Vietnamese-American community. They alleged that Dangelas is "a local communist" who had been "unmasked," and they called on others in the Vietnamese-American community to act in response to the unmasking. They claimed that Dangelas was a threat who would divide their community: "Just one local Vietcong bitch was able to break the Houston community in pieces . . . What's going to happen next?"

All parties also agree that Bui and Nguyen's Facebook posts elicited emotional and angry reactions within the Vietnamese community. Some expressed solidarity with Bui and Nguyen and argued that they should not "let this fly dirty the country we live in. Destroy her."

Many of the posts by Bui, Nguyen, and others contained profanities, obscene name-calling, and alarming calls for violence against Dangelas. Whatever view one might hold regarding the benefits of allowing judicial access to obtain removal of such inflammatory posts, it cannot be denied that Dangelas's suit was brought "in response to" Bui and Nguyen's statements to others in their Vietnamese-American refugee community posted on a site specifically addressed to that community's common interests and concerns in which they alerted their shared community of a perceived danger.

11

We conclude that Bui and Nguyen satisfied their initial burden to establish that Dangelas's defamation suit is a legal action that is based on, relates to, or is in response to their exercise of the right of association. *See Backes v. Misko*, 486 S.W.3d 7, 20–21 (Tex. App.—Dallas 2015, pet. denied) (concluding that movants met initial burden through evidence they were friends, they associated on social media about a common interest, and the nonmovant's suit related to their posts); *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *4 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.) (members of homeowners' association shared common interests, suit against members related to right of association, and TCPA applied); *see also* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

We turn now to whether Dangelas met her burden, after it shifted to her, to establish a prima facie case by clear and specific evidence of each essential element of her claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c).

## Step Two: Dangelas's Burden

Before determining if Dangelas met her burden, we first must address an argument raised by Bui and Nguyen regarding the unit of measurement for Dangelas's prima face case.

12

**A.    Whether Dangelas's defamation suit presents 13 separate "legal actions"**

Bui and Nguyen attempt to burden Dangelas with meeting a prima facie threshold on 13 separate "legal actions" within her single defamation suit. Their argument to split one cause of action into multiple legal actions is premised on their contention that the term "legal action" in Section 27.005(c) of the TCPA is used "synonymously" with the term "claim" in the same provision. They contend the terms "legal action" and "claim" are interchangeable, and, relying on the broad definition of "legal action" found in Section 27.001(6), they argue Dangelas must establish by clear and specific evidence a prima facie case for every form of relief, damage, and court action sought. For example, Bui and Nguyen allege that Dangelas has asserted separate legal actions for every category of Facebook post she sought to have deleted, and they seek to require a prima facie showing for each category. They also seek to label as separate legal actions Dangelas's requests for (1) "reasonable and necessary fees to trial and appeal," (2) "expenses, court fees, and associated costs," and (3) "all such other relief to which [she] is entitled in equity or law" and to require a prima facie showing—at this early, pre-discovery stage of the proceedings—for each form of relief.

We must reject Bui and Nguyen's argument. The TCPA requires Dangelas, as the nonmovant, to establish "a prima facie case for each *essential* element" of her claims against Bui and Nguyen. *Id.* (emphasis added). Dangelas's defamation

claim is a "legal action." *See D Magazine Ptrs., L.P. v. Rosenthal*, 529 S.W.3d 429, 441 (Tex. 2017). But each fact-based theory of recovery is not a separate legal action. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 201–03 (Tex. App.—Fort Worth 2017, pet. denied) (rejecting idea that each form of recovery is separate legal action); *see also Paulsen v. Yarrell*, 537 S.W.3d 224, 233 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (applying doctrine of *ejusdem generis* to conclude Section 27.001(6)'s "legal action" definition refers to "procedural vehicle[s] for the vindication of a legal claim" and cannot sweep within its terms that which is ancillary to both "the underlying lawsuit and [the] substantive claims that are the Act's core focus"); *Deepwell Energy Servs., LLC v. Aveda Transp. and Energy Servs.*, 574 S.W.3d 925, 929 (Tex. App.—Eastland 2019, pet. denied).

Dangelas's suit does not hinge on any one specific statement being defamatory; rather, if just one of the many allegedly defamatory statements were proven to the appropriate evidentiary standard, Dangelas would satisfy her TCPA burden on her defamation legal action. Splitting a single cause of action into multiple "legal actions" based on varying factual theories or remedies sought inappropriately burdens Dangelas beyond what the TCPA's language supports. *See Van Der Linden*, 535 S.W.3d at 201–03 (explaining that TCPA nonmovant's burden in defamation action does not require prima facie showing of evidence in support of exemplary damage recovery, even if exemplary damages are pleaded on

14

egregious facts, because exemplary damages are not an *essential* element of a defamation cause of action). Bui and Nguyen's argument to cast each request for costs and fees as a separate legal action fails for like reasons. *Id.* at 203 (stating that TCPA provides for dismissal of actions, not individual forms of remedies).

Additionally, under these facts, the request and grant of injunctive relief is not separately challengeable as its own legal action. Dangelas filed an original petition asserting a single cause of action for defamation and applying for injunctive relief. The application for injunctive relief was resolved when the trial court granted a temporary restraining order on August 17, 2018. The only claim that remained pending at that point was for defamation. Bui and Nguyen filed their TCPA dismissal motions on August 27, after the temporary restraining order had been granted. Bui and Nguyen contend their TCPA challenge can attack the injunctive relief granted. We reject Bui and Nguyen's TCPA challenge to injunctive relief for at least two reasons.

First, Dangelas sought injunctive relief in connection with her defamation suit. The injunctive relief was a form of remedy tied to the defamation cause of action. Under the *Van Der Linden* analysis, a remedy request is not separately challengeable apart from the cause of action to which it is linked. *Id.* ("Because when a legal action is dismissed pursuant to the TCPA, all remedies available under that legal theory disappear with the dismissal of the action itself, a chapter

15

challenge to a request for injunctive relief should be directed at the underlying legal action, not at the requested remedy."); *Ruder v. Jordan*, No. 05-14-01265-CV, 2015 WL 4397636, at *6 (Tex. App.—Dallas July 20, 2015, no pet.) (mem. op.) (declining to review separately trial court's denial of TCPA dismissal of injunctive relief because "injunctive relief . . . is ancillary to the defamation claims" already reviewed); *see Hughes v. Giammanco*, 579 S.W.3d 672, 678–81 (Tex. App.—Houston [1st Dist.] 2019) (Rule 202 petition does not stand separate from the suit to which it is linked nor asserts a substantive claim or cause of action; it is, instead, a procedural tool in furtherance of the underlying claim), *judgment set aside*, No. 01-18-00771-CV, 2019 WL 3331124 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.).

Second, Bui and Nguyen currently have a separate appeal pending in this Court challenging the merits of the issued temporary injunction issued by the trial court. Allowing the use of an interlocutory, accelerated appeal of a denied TCPA motion as a vehicle to challenge the merits of an already-granted injunction is beyond the intended scope and use of the TCPA's summary-dismissal procedures. *See Collins v. Collins*, No. 01-17-00817-CV, 2018 WL 1320841, at *2 (Tex. App.—Houston [1st Dist.] March 15, 2018, pet. denied) (mem. op.) (stating that "TCPA provides for the early dismissal of certain categories of *meritless* cases" (emphasis added)); *cf. Dow Jones & Co., Inc. v. Highland Capital Mgmt., L.P.*,

16

564 S.W.3d 852, 857–58 (Tex. App.—Dallas 2018, pet. denied) (rejecting effort to broaden TCPA's scope to challenge ancillary aspects of case because it would result in "proliferation of motions to dismiss" focused on ancillary aspects instead of the "underlying lawsuit and substantive claims that are the TCPA's core focus"; noting that any other interpretation "could cause the judicial system to grind to a halt," "run counter to the TCPA's stated purpose," and "promote a potentially absurd result").

The trial court granted Dangelas injunctive relief. That interlocutory order was immediately appealable under Article 51.014(a)(4), and Bui and Nguyen have appealed it. *See Bui v. Dangelas*, No. 01-18-00790-CV (appeal filed Sept. 4, 2018); *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4). Whether the trial court abused its discretion in granting Dangelas injunctive relief is outside the scope of a TCPA review of a nonmovant's prima facie case for defamation and is better resolved in the direct appeal currently pending in this Court. We will not consider Bui and Nguyen's arguments raised in the TCPA appeal regarding the appropriate scope of the injunction order that issued.

Having rejected Bui and Nguyen's argument for requiring Dangelas to make a prima facie showing of multiple sub-parts of her defamation claim, we now turn to whether Dangelas met her burden to establish a prima facie case for her single cause of action: defamation.

17

**B.**     **Whether Dangelas met her burden with regard to the defamation claim**

"Defamation is generally defined as the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). The tort includes libel and slander. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Defamatory statements are those that tend to (1) "injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury" as well as those statement that (2) "impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM. CODE § 73.001; *see Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op. on reh'g); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.). The elements of a defamation claim include (1) the publication of a false statement of fact to a third party that was defamatory concerning the plaintiff, (2) the requisite degree of fault, and (3) in some cases, damages. *In re Lipsky*, 460 S.W.3d at 593.

A statement is considered "published" when it is communicated to a third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning. *Thomas–Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The requisite degree of fault that applies is determined based on the status of the individual allegedly defamed (or, in some cases, the context of the statement made) [4]. *See Neely*, 418 S.W.3d at 61; *Maewal v. Adventist Health Sys./Sunbelt, Inc.*, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth 1993, writ denied); *Combined Law Enf't Ass'n of Tex. v. Sheffield*, No. 03–13–00105–CV, 2014 WL 411672, at *6–8 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). A private individual suing for defamation is required to prove negligence in the making of the statement, while a public figure is required to prove actual malice. *Neely*, 418 S.W.3d at 61.

In making a prima facie showing, damages must be shown when the form of defamation is defamation per quod, but general damages are presumed to exist for defamation per se, meaning that actual damages are not an essential element that must be established in response to a TCPA motion seeking to dismiss a defamation per se claim. *See In re Lipsky*, 460 S.W.3d at 593, 596 ("Defamation per se refers to statements that are so obviously harmful that general damages may be presumed," including non-economic losses like loss of reputation and mental anguish, "and thus actual damages is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply").

---

[4] Regarding context, the heightened standard of malice is required if, for example, the challenged communication is made by a peer review committee. *See Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 710 (Tex. App.—Amarillo 2018, pet. denied).

We consider whether Dangelas established a prima facie case as to each of these defamation elements.

### 1. A false, defamatory statement of fact about the plaintiff that was published to a third party

Whether a statement is defamatory is initially a question of law. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App.—Dallas 2015, no pet.). As stated, a defamatory statement "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule" or "to impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM. CODE § 73.001; *see Campbell*, 471 S.W.3d at 624–25. "To qualify as defamation, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. By contrast, a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing," in light of the circumstances, "or that only hurts a person's feelings, is not actionable." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 202 (Tex. App.—El Paso 2017, no pet.); *see Campbell*, 471 S.W.3d at 624.

The statement must assert an objectively verifiable fact but need not do so directly: an opinion can be actionable "if it expressly or impliedly asserts facts that can be objectively verified." *Campbell*, 471 S.W.3d at 625; *Avila v. Larrea*, 394 S.W.3d 646, 655, 658 (Tex. App.—Dallas 2012, pet. denied). Whether a statement is fact or opinion depends on the verifiability of the statement and the entire

20

context in which the statement is made. *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). Whether a statement is a constitutionally protected opinion or an actionable statement of fact is a question of law. *Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.).

We construe an allegedly defamatory publication as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it. *In re Lipsky*, 460 S.W.3d at 594; *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000); *see City of Keller v. Wilson,* 168 S.W.3d 802, 811 (Tex. 2005) ("[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself."). A "person of ordinary intelligence" is one who "exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004). This is an objective standard. *Campbell*, 471 S.W.3d at 625. "Because a publication's meaning depends on its effect on an ordinary person's perception, courts have held that under Texas law a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory." *Turner*, 38 S.W.3d at 114.

21

Bui and Nguyen have, in effect, admitted that their statements that stoked fear and lead to calls for violence were false. The trial court permitted Dangelas limited discovery to prepare a response to Bui and Nguyen's TCPA motion. Dangelas deposed Bui and Nguyen. Both conceded that there was no factual basis for several of their posts.[5] Bui attempted to distance himself from his fact-specific post, in which he asserted that Dangelas had transferred $1 billion from communist sources into the United States to further the Viet Cong and communism, by stating that he does not know Dangelas, does not talk to many people because of his work schedule, and assumed someone else would "be the one that take[s] responsibility" for the accusation.

Nguyen stated that the reason she accused Dangelas of being a communist is because she, herself, had recently been accused of being a communist and she thought, "Let me show you the real Communist." Nguyen admitted she did not personally know Dangelas and had only read about her on the internet. She did not ask Dangelas if she was a communist, nor did she ask anyone else if they suspected Dangelas was a communist. She decided Dangelas was a communist and posted

---

[5]     Bui and Nguyen argue that we may not consider the contents of their deposition testimony because the decision to grant or deny a TCPA motion is made solely on the pleadings and submitted affidavits. As stated earlier, the TCPA provides a mechanism for limited discovery, and evidence adduced through that discovery may be considered in ruling on the TCPA motion and on appeal of that ruling. *See Batra*, 562 S.W.3d at 707.

fact-specific accusations on Facebook linking Dangelas to the Viet Cong and plots to use foreign money to gain influence, much like a "mafia."

When asked if Nguyen had any personal knowledge about Dangelas "performing duties as a member of the communist party back in Vietnam," Nguyen replied, "Not my personal knowledge, no." According to Nguyen, no one ever told her that Dangelas was part of a Viet Cong conspiracy. She, nonetheless, made the connection based on the money Dangelas spent in the community, the parties she attended, and the donations she made to a particular religious entity. In response, she was asked: "So you've strung together a couple things she did that lots of people do, and you conclude based on that that she's part of this secret conspiracy to advance Viet Cong interests in the United States. That's what you did, right?" And she responded: "Yeah, yes."

Bui and Nguyen also admitted in their depositions that they do not know who the father of Dangelas's child is despite both having supported the factual assertion made to the Vietnamese community, since proven false, that the child's father is secretly the former leader of Vietnam.

There is no evidentiary support for the statements that Dangelas is a Viet Cong operative in the United States with $1 billion in communist money at her disposal to bribe locals or that she is the mother of a child born to the communist former leader of Vietnam.

23

We note that both Bui and Nguyen submitted affidavits in support of their motions to dismiss averring that they never published anything about Dangelas that they "did not believe to be true" or to which they had "serious doubts" about its truth. But those non-specific, self-serving statements aimed at disproving an element of Dangelas's defamation claim were contradicted by their own direct, specific testimony admitting that they had no factual basis for individually discussed statements contained in their Facebook posts. *Cf. Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85–91 (Tex. 2018) (discussing sham-affidavit rule in context of summary-judgment evidentiary burden). Bui and Nguyen's deposition testimony contributes to Dangelas's prima-facie proof of false statements. *Cf. Bentley*, 94 S.W.3d at 596 ("Imagining that something may be true is not the same as belief.")

Their deposition testimony also contributes to the proof that the statements were defamatory. Bui admitted that accusing Dangelas of being a communist would make others in the Vietnamese refugee community "keep a distance from her," not "get too close to her," and "isolate her." He agreed that it was his intention when he posted these accusations about Dangelas that people "isolate her" and not "be friends with her" anymore. Nguyen agreed that an accusation that someone is a Viet Cong communist would harm that person's reputation because "[p]eople just know . . . this is someone who is not trustworthy." Both Bui and

24

Nguyen admitted that their accusations would harm Dangelas's relationships and cause people to no longer trust her.

Dangelas is a local businessperson who depends on her reputation both professionally and socially. The evidence establishes a prima facie showing that Bui and Nguyen's statements were defamatory in that they harmed her reputation by alleging she is a Viet Cong spy who has had a child with a communist former leader and has used hundreds of millions of dollars to further a Viet Cong's mission of dividing the local Vietnamese community.[6]

## 2. Requisite degree of fault

Bui and Nguyen devote a great deal of their brief to arguing why Dangelas should be considered a public figure to invoke the higher standard of "actual malice" in connection with her burden to establish a prima facia defamation claim. We conclude we need not decide whether Dangelas is a public figure because, even under the heightened standard of "actual malice," Dangelas made a prima facie showing.

Actual malice means "knowledge of, or reckless disregard for, the falsity of a statement." *Bentley*, 94 S.W.3d at 591. Reckless disregard is a subjective

---

[6] Bui and Nguyen seek to minimize the impact of their statements by noting that, "while there appear to have been threatening language used on Facebook, Bui and Nguyen's own comments do not meet the First Amendment standard of a 'true threat.'" This argument misses the mark. The burden placed on Dangelas is to establish the prima facie elements of a defamation claim, not to convince the trial court or this Court that Bui and Nguyen's comments qualify as "true threats" in the constitutional sense to allow state restriction of speech.

standard that focuses on the conduct and state of mind of the defendant. *Id.* It requires evidence that the defendant entertained serious doubts as to the truth of his publication or had a high degree of awareness that his statements were probably false. *Id.* State of mind can be established through circumstantial evidence viewed in the context of the factual record as a whole. *Id.*

A defendant's profession of good faith does not control. *Id.* at 596. A claimed good-faith belief in the truth of a statement is unlikely to be persuasive when "a story is fabricated by the defendant," a statement "is the product of his imagination," the allegations made "are so inherently improbable that only a reckless man would have put them in circulation," or when "there are obvious reasons to doubt" the accuracy of the statements made. *Id.* Finally, "inherently improbable assertions and statements made on information that is obviously dubious may show actual malice. . . . Imagining that something may be true is not the same as belief." *Id.*

Both Bui and Nguyen conceded in their deposition testimony there was no factual basis for their specific, factual assertions against Dangelas. There was no evidence she was a Viet Cong spy. There was no evidence of $1 billion being transferred to Dangelas by the Viet Cong. Neither knew who the father of Dangelas's daughter was, and there is no indication that either had any evidence it was Vietnam's former leader, as they claimed.

26

Bui and Nguyen's statements fall into the categories of statements described in *Bentley* as so inherently improbably, obviously dubious, and wholly fabricated as to draw serious doubt on any professed belief in their truth. *See id.* at 591, 596. Bui and Nguyen may have imagined that Dangelas was an international spy, but their imagination does not equate to a belief that their accusations were true. *Id.* at 596. Dangelas satisfied the prima facie showing of actual malice.

### 3.    Damages

Evidence of special damages is not required in a prima facie showing when the statements qualify as defamation per se, as opposed to defamation per quod. *See In re Lipsky*, 460 S.W.3d at 596. "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Id.* Defamation per se includes several categories of falsehoods, such as those accusing someone "of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct." *Id.* Likewise, remarks "that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se." *Id.* "Whether a statement qualifies as defamation per se is generally a question of law." *Id.* If Bui and Nguyen's statements qualify as defamation per se, Dangelas had no burden to make a prima facie showing of damages to survive a TCPA dismissal motion. *Van Der Linden*, 535 S.W.3d at 198, 202.

We conclude that Bui and Nguyen's statements qualify as defamation per se. They accused her of criminal activity including funneling fund from a foreign communist country into the United States to bribe people, and they made statements that would adversely reflect on her fitness to lead a business in their community. Thus, Dangelas did not have a burden to make a prima-facie showing of damages. *Id.*

In sum, Bui and Nguyen met their initial burden, and, when the burden shifted to Dangelas, she made a prima facie showing on all essential elements of her defamation suit. We overrule Bui and Nguyen's second issue. Dangelas was not required to make a separate prima facie showing on the injunctive relief issue or the attorney's fee award. We overrule Bui and Nguyen's first and third issues. Having resolved these issues, we conclude the trial court did not err in denying Bui and Nguyen's TCPA motions to dismiss.

## Conclusion

We affirm the trial court's order and remand for further proceedings.


Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.